JOHN HOUSTON SCOTT, CA BAR NO. 72578
LIZABETH N. dE VRIES, CA BAR NO. 227215
SCOTT LAW FIRM
1375 Sutter Street, Suite 222
San Francisco, CA 94109
Telephone: 415-561-9600
Facsimile:   415-561-9609

Attorneys for Plaintiff
FELICIA POWE-FLORES

DEBORAH J. BROYLES, CA BAR NO. 167681
DEBORAH R. SCHWARTZ, CA BAR NO. 208934
THELEN REID BROWN RAYSMAN & STEINER LLP
101 Second Street, Suite 1800
San Francisco, CA  94105
Tel. 415.371.1200
Fax 415.371.1211

Attorneys for Defendant
KAISER FOUNDATION HOSPITALS

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| FELICIA POWE-FLORES, | Case No.: C 08-02527 TEH |
|---|---|
| Plaintiff, | **JOINT CASE MANAGEMENT STATEMENT AND [PROPOSED] CASE MANAGEMENT ORDER** |
| vs. | |
| KAISER FOUNDATION HOSPITALS and RYAN THOMAS, | Judge: The Hon. Thelton E. Henderson<br>Date of Initial CMC:  August 25, 2008<br>Time of Initial CMC: 1:30 p.m. |
| Defendants. | |

Pursuant to Local Rule 16-9 and the Standing Order for All Judges in the Northern District, plaintiff Felicia Powe-Flores ("Plaintiff") and defendant Kaiser Foundation Hospitals ("Kaiser") submit this Joint Case Management Statement and Proposed Case Management Order and request the Court to adopt it as the Case Management Order in this case:

///

///

1. ***Jurisdiction and Service: The basis for the court's subject matter jurisdiction over plaintiff's claims and defendant's counterclaims, whether any issues exist regarding personal jurisdiction or venue, whether any parties remain to be served, and, if any parties remain to be served, a proposed deadline for service.***

   Response: This Court has original jurisdiction over this action because this case involves an alleged violation of 42 U.S.C. Section 1981. (28 U.S.C. §1331.) Kaiser has been served and has answered. On July 21, 2008, Plaintiff served by substitute service defendant Ryan Thomas ("Defendant Thomas").

2. ***Facts: A brief chronology of the facts and a statement of the principal factual issues in dispute.***

   Plaintiff's Response: In November 1993, Plaintiff Felicia Powe-Flores ("Flores") began working for Defendant Kaiser as a Central Supply Technician. Flores remained in this position until 2002, when she transferred to the Oakland Sterile Processing Department to be a technician. Soon thereafter, Kaiser promoted Flores to Lead Technician and then to Sterile Processing Department Supervisor. Flores initially reported to Rodney Gore when he was her supervisor (and later when he became the manager), who reported to Jim Barnett, who reported to Eileen Ullman, who reported to Sandra Schmidt.

   In 2002, Kaiser hired Defendant Ryan Thomas as a technician in the Oakland Sterile Processing Department, the same department in which Flores worked. From 2002 through 2006, Thomas made violent comments and gestures; exposed himself to Flores and others; and, Rodney Gore and Jim Barnett were aware of this inappropriate and dangerous behavior and failed to protect the employees from it.

   On May 5, 2004, Thomas first threatened Flores individually. When Flores asked Thomas to return to the Sterile Processing Department from the employee lounge, he responded, "How dare you tell me what to do, you bitch! I should spit in your face…you hoe…black bitch! You don't know who you are fucking with!" Flores asked Thomas not to speak to her in this manner, to which he responded, "Shut the fuck up…I could slap the shit out of you!" Flores ran to report the incident to Gore. Thomas followed her to Gore's office and was pacing behind her. Gore invited Flores to go outside with him. Gore instructed Thomas to leave. Flores reported the incident to

security and the Oakland Police. She was subsequently reprimanded for not following the proper chain of command to report her concerns to manager Jim Barnett rather than to supervisor Gore before calling security.

In the course of Kaiser's "investigation" into the 2004 incident, Jim Barnett and Eileen Ullman accused Flores, an African American woman, of discriminating against African American men because she had made a previous report about another African American male who harassed her and she was married to a non- African-American (Filipino) man. Kaiser imposed no discipline against Thomas and did nothing to discourage any future threats.

After the 2004 threat, Flores's interactions with Thomas were limited. Flores worked the night shift and Thomas was "on-call" and was not regularly called. More often than not, they worked different shifts. Despite his 2004 criminal threat, Kaiser kept Thomas as an employee so Flores attempted to maintain a professional relationship with him, particularly since she had been promoted to a supervisory position.

On March 30, 2006, Flores alleges Thomas threatened her a second time when she was leaving her night shift and he was arriving to his day shift. Thomas told Flores and another supervisor, Rachel Moree, that he would "go to his car, get his knife and cut…[ Felicia Flores] up into little pieces." Rachel Moree reported the incident. Starting on April 3, 2006, Flores reported the incident to several individuals, including Sandra Schmidt and Frank Mellon in the Human Resources Department. Schmidt told Flores it looked "funny" that Flores had called security on two occasions against two African American men. On April 4, 2006, Flores reported the threat to Gore, who told Flores he had "White Man's Guilt" and did not want to see another African American baby with a father who was not working. Thereafter, Flores received threatening voicemail messages on her cell phone and text messages on her pager saying "just when you think it is over, it has just begun."

On April 16, 2006, Flores requested that Kaiser provide her with the same protections it had provided other White employees who were threatened by their co-workers, including obtaining a restraining order. Kaiser did not respond to her request and never provided any protections. Instead, Schmidt ordered Flores to attend a meeting with Thomas present. Although

1  Kaiser claims that it "promptly removed Thomas from the workplace, investigated the incident,
2  and determined that Thomas's employment should be terminated as a result," Thomas was still
3  present in the facility after the 2006 threat, no protections were provided to Flores, and, rather than
4  being fired, Thomas was permitted to resign.

5  After this 2006 threat, Flores began experiencing anxiety attacks, became physically ill,
6  and sought medical attention. In May 2006, Schmidt told Flores that she would need to handle her
7  anxiety attacks or the supervisor position was not the right position for her. Flores responded that
8  the attacks were not caused by the stress of her duties, but rather, out of her fear for her safety or
9  life after being threatened by Thomas.

10  After the 2006 threat, Flores was forced to transfer out of the Oakland facility because of
11  management's hostility towards her. In June 2006, Flores applied for and received a lateral
12  transfer to work in the Sterile Processing Department at Kaiser's Walnut Creek Hospital. But
13  Kaiser Oakland refused to immediately release Ms. Flores to transfer to the Walnut Creek facility,
14  and, had her continue to work for the Oakland facility until August 2006.

15  In September 2006, Flores applied for the Oakland manager position, previously held by
16  Barnett. In response, Schmidt told Flores that she was not to be promoted because of her anxiety
17  issues and the manner in which she handled the Thomas situation. In June 2007, Flores applied for
18  another manager position and was promoted to Sterile Processing Department Manager at Kaiser
19  Antioch, where she works to date.

20  Kaiser's Response:  In November 1993, Plaintiff began working for Kaiser as a Central
21  Supply Technician. She remained in this position until 2002, at which time she transferred to the
22  Oakland Sterile Processing Department to be Technician.   Kaiser subsequently promoted Plaintiff
23  to Lead Technician and then to Sterile Processing Department Supervisor.  In 2002, Kaiser hired
24  Defendant Thomas as a technician in the Oakland Sterile Processing Department, the same
25  department in which Plaintiff was a supervisor.

26  In May 2004, Plaintiff (who is African American) claims Thomas (who is African
27  American) made a racially derogatory remark to her.  Specifically, she alleges that when she asked
28  Thomas to return to the Sterile Processing Department, he responded, "How dare you tell me what

to do, you bitch! I should spit in your face…you hoe…black bitch! You don't know who you are fucking with!" Plaintiff claims she asked Thomas not to speak to her in this manner, to which he responded, "Shut the fuck up…I could slap the shit out of you!" Plaintiff reported this incident to Kaiser security and the Oakland Police Department. Kaiser investigated the incident and took prompt and effective remedial action.

Plaintiff continued to work with Defendant Thomas in the Oakland Sterile Processing Department for the next two years without incident. Then, on March 30, 2006, Plaintiff alleges Thomas told another Sterile Processing Department Supervisor, Rachel Moree, he would "go to his car, get his knife and cut…[Plaintiff] up into little pieces." Plaintiff concedes she did not report this incident to Kaiser. As a result of Moree's complaint, Kaiser promptly removed Thomas from the workplace, investigated the incident, and determined that Thomas's employment should be terminated as a result. Plaintiff's conduct during Thomas's union-mandated disciplinary process was unprofessional and uncooperative.

Subsequently, Plaintiff applied for and received a lateral transfer to be a Sterile Processing Department at Kaiser's Walnut Creek Hospital. She continued to work in Oakland for several weeks after she was awarded this position. During this period, she refused to perform her job duties. It was during this same period (i.e., after she was awarded the transfer to Walnut Creek) that she asked to become the Manager of the Sterile Processing Department in Oakland. There is no merit to Plaintiff's claim that she was not awarded this position because of the complaint about Thomas. Regardless, Plaintiff subsequently was promoted to Sterile Processing Department Manager at another Kaiser facility where Plaintiff continues to work to date.

*3.     Legal Issues:  A brief statement, without extended legal argument, of the disputed points of law, including reference to specific statutes and decisions.*

Plaintiff's Response: Flores's legal issues to be tried include:

- Whether defendants are liable under Cal. Civ. Code Sections 51.7 and 52.1, public policy, and 42 U.S.C. Section 1981; and,
- How damages and injunctive relief under these claims will fully and fairly compensate the plaintiff.

Felicia Powe-Flores reserves the right to raise additional issues after discovery begins.

<u>Kaiser's Response:</u>  Kaiser's legal issues to be tried include:

- Whether Plaintiff can establish a *prima facie* case of race discrimination under Section 1981;
- If so, whether Kaiser can establish it had legitimate non-discriminatory reasons for its actions.
- Assuming Kaiser can establish it had legitimate non-discriminatory reasons for its actions, whether Plaintiff can demonstrate Kaiser's reasons were pretextual;
- Whether Plaintiff can establish a *prima facie* case of race harassment under Section 1981;
- Assuming Plaintiff can establish a *prima facie* case of race harassment, and to the extent Plaintiff alleges she was subjected to such harassment by Defendant Thomas, who was Plaintiff's subordinate and not a supervisory-level employee, whether Kaiser knew or should have known of the alleged harassment and failed to take appropriate corrective action;
- Whether Plaintiff can establish Kaiser wrongfully decided not to promote her to the Oakland Sterile Processing Department Manager position in violation of public policy;
- Whether Plaintiff's allegation about an alleged incident that occurred between her and Defendant Thomas in 2004 is barred by the Bane and Ralph Acts three-year statute of limitations;
- Whether Kaiser's conduct related to the March 2006 incident between Defendant Thomas and Plaintiff violated the Ralph and/or Bane Acts;
- If liability is established, whether Plaintiff is entitled to damages, and if so, in what amount in light of the fact that she currently is employed at Kaiser; and
- Whether Plaintiff is entitled to punitive damages.

Kaiser reserves the right to raise additional legal issues as the case progresses.

4. ***Motions: All prior and pending motions, their current status, and any anticipated motions.***

<u>Plaintiff's Response</u>: Flores has not filed any motions yet. She may file a motion to amend and a motion for summary adjudication as to liability and other issues to be determined after she has conducted discovery. At trial, she would oppose a motion to bifurcate liability and damages, and, will file motions in limine.

<u>Kaiser's Response</u>: Kaiser has not filed any motions to date. Kaiser intends to file a motion for summary judgment and/or partial summary judgment. If this case proceeds to trial, Kaiser plans to file a motion to bifurcate the punitive damages claim, as well as appropriate motions *in limine*.

5. ***Amendment of Pleadings: The extent to which parties, claims, or defenses are expected to be added or dismissed and a proposed deadline for amending the pleadings.***

<u>Response</u>: Kaiser proposed the parties agree to an October 1, 2008 deadline to amend the Complaint or add new parties. Since Ryan Thomas has yet to appear, and, the EEOC has yet to conclude its investigation into the underlying facts of this litigation or issue a right-to-sue letter, Flores reserves her right to seek to amend her complaint as soon as she discovers facts which trigger the need to do so.

6. ***Evidence Preservation: Steps taken to preserve evidence relevant to the issues reasonably evident in this action, including interdiction of any document-destruction program and any ongoing erasures of e-mails, voice mails, and other electronically-recorded material.***

<u>Response</u>: Plaintiff's counsel and Kaiser's counsel have informed their respective clients that relevant evidence must be preserved.

7. ***Disclosures: Whether there has been full and timely compliance with the initial disclosure requirements of Fed. R. Civ. P. 26 and a description of the disclosures made.***

<u>Response</u>: On August 18, 2008, Plaintiff and Kaiser will exchange Initial Disclosures, which include specific information about individuals who are likely to have discoverable information which each party may use to support its claims or defenses, categories of documents

1  which may contain relevant information that each party may use to support its claims or defenses,

2  a computation of damages claimed, if any, and insurance coverage, if any.

8.  *Discovery: Discovery taken to date, if any, the scope of anticipated discovery, any proposed limitations or modifications of the discovery rules, and a proposed discovery plan pursuant to Fed. R. Civ. P. 26(f).*

Response: Both parties will propound written discovery, including interrogatories, requests for production, and/or requests for admission. Both parties will take depositions. The parties intend to work closely with each other to schedule depositions in a manner calculated to avoid unnecessary cost or burden. Because private personnel documents and information of current and former Kaiser employees may be produced during litigation, the parties will file a mutually agreeable Stipulated Protective Order based on the Northern District's Stipulated Protective Order template.

9.  *Class Actions: If a class action, a proposal for how and when the class will be certified.*

Response: This is not a class action.

10. *Related Cases: Any related cases or proceedings pending before another judge of this court, or before another court or administrative body.*

Response: In 2007, Plaintiff filed an administrative charge (Charge No. 550-2007-00445) with the Equal Employment Opportunity Commission ("EEOC") based on the same underlying allegations as Plaintiff's lawsuit which is pending before this Court. Plaintiff has not requested a right to sue from the EEOC, and her charge remains open to date. Plaintiff's counsel is seeking approval from Plaintiff to obtain an immediate right to sue from the EEOC.

11. *Relief: All relief sought through complaint or counterclaim, including the amount of any damages sought and a description of the bases on which damages are calculated. In addition, any party from whom damages are sought must describe the bases on which it contends damages should be calculated if liability is established.*

Plaintiff's Response: Plaintiff Powe-Flores seeks monetary relief according to proof. She seeks compensatory damages calculated by lost earnings, promotions, bonuses, and benefits; and, damage to her career and reputation. In addition, she seeks general damages for her ongoing fear,

anxiety, embarrassment, and emotional distress. In addition, she seeks heightened remedies including civil penalties permitted by statute, costs, and attorney-fee awards permitted by law. And she seeks punitive damages and prejudgment interest as awarded. In addition, she seeks injunctive relief to remedy the unlawful conduct.

<u>Kaiser's Response</u>:  At this time, Kaiser has not asserted any counter-claims against Plaintiff, but reserves the right to do so should facts and information obtained during discovery so necessitate.  Should Kaiser ultimately prevail with regard to Plaintiff's claims, it intends to seek the costs associated with this action. Kaiser reserves the right to seek costs and attorneys' fees as the circumstances of the case permit.

*12.* ***Settlement and ADR:  Prospects for settlement, ADR efforts to date, and a specific ADR plan for the case, including compliance with ADR L.R. 3-5 and a description of key discovery or motions necessary to position the parties to negotiate a resolution.***

<u>Response</u>: Plaintiff and Kaiser will be filing a stipulation and proposed order selecting private mediation.

*13.* ***Consent to Magistrate Judge For All Purposes:  Whether all parties will consent to have a magistrate judge conduct all further proceedings including trial and entry of judgment.***

<u>Response</u>: The parties do not consent to a magistrate judge for all purposes.

*14.* ***Other References:  Whether the case is suitable for reference to binding arbitration, a special master, or the Judicial Panel on Multidistrict Litigation.***

<u>Response</u>: The parties do not see this case as suitable for binding arbitration, a special master, or the Judicial Panel on Multidistrict Litigation.

*15.* ***Narrowing of Issues:  Issues that can be narrowed by agreement or by motion, suggestions to expedite the presentation of evidence at trial (e.g., through summaries or stipulated facts), and any request to bifurcate issues, claims, or defenses.***

<u>Response</u>:  Plaintiff has requested a jury trial in this matter.  Kaiser may request bifurcation on the issues of liability and damages, as well as bifurcation of the issue of punitive

1  damages.  The parties anticipate that a trial would require five to seven court days, and at this time
2  are unable to determine if there are expedited means of presenting evidence.

*16.    Expedited Schedule:  Whether this is the type of case that can be handled on an expedited basis with streamlined procedures.*

Response: The parties do not believe this case is appropriate for handling on an expedited basis.

*17.    Scheduling:  Proposed dates for designation of experts, discovery cutoff, hearing of dispositive motions, pretrial conference and trial.*

Response: At this time, the parties believe the earliest scheduling deadlines are as follows:

| | |
|---|---|
| Deadline to amend Complaint or add new parties: | October 1, 2008 |
| Non-expert discovery cutoff, including filing any related motions: | March 18, 2009 |
| Deadline to file dispositive motions: | May 1, 2009 |
| Pre-trial conference: | August 28, 2009 |
| Trial: | September 28, 2009 |

*18.    Trial:  Whether the case will be tried to a jury or to the court and the expected length of the trial.*

Response: Plaintiff requests a jury trial.  The parties anticipate the trial lasting 5 to 7 court days.

*19.    Disclosure of Non-party Interested Entities or Persons:  Whether each party has filed the "Certification of Interested Entities or Persons" required by Civil Local Rule 3-16. In addition, each party must restate in the case management statement the contents of its certification by identifying any persons, firms, partnerships, corporations (including parent corporations) or other entities known by the party to have either:  (i) a financial interest in the subject matter in controversy or in a party to the proceeding; or (ii) any other kind of interest that could be substantially affected by the outcome of the proceeding.*

Plaintiff's Response: Powe-Flores is aware of no financial or interest to report.

Kaiser's Response:  Kaiser has no such interest to report.

20.  ***Such other matters as may facilitate the just, speedy and inexpensive disposition of this matter.***

<u>Response</u>: The parties are not aware of other matters conducive to the just, speedy, and inexpensive resolution of this matter.

Date: August 18, 2008          Plaintiff's Counsel     _____/s/_____
                                                        Lizabeth N. de Vries
                                                        Attorney for Plaintiff
                                                        FELICIA POWE-FLORES


Date: August 18, 2008          Defendant Kaiser's Counsel
                                                   _____/s/_____
                                                        Deborah R. Schwartz
                                                        Attorney for Defendant
                                                        KAISER FOUNDATION HOSPITALS

IT IS SO ORDERED.

Date: _____          _____
                                                 Thelton E. Henderson, Judge
                                                 United States District Court